**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Oak and Fort Corp., *et al.*,[1] | Case No. 25-11282 (MG) |
| Debtors in a Foreign Proceeding. | Joint Administration Requested |

**DECLARATION OF MIN GYOUNG KANG IN SUPPORT OF
VERIFIED PETITION FOR ENTRY OF AN ORDER RECOGNIZING
FOREIGN MAIN PROCEEDINGS AND GRANTING ADDITIONAL RELIEF**

I, Min Gyoung Kang, hereby declare:

1. I am a director, Chief Executive Officer, and founder of Oak and Fort Corp. ("O&F Canada"), 1282339 B.C. Ltd. ("B.C. Ltd."), Oak and Fort US Group, Inc. ("O&F US"), Oak and Fort Enterprise (U.S.), Inc. ("O&F Enterprise"), NYM Merger Holdings LLC ("NYM Merger"), and Oak and Fort California, LLC ("O&F California" and together with O&F, B.C. Ltd., O&F US, O&F Enterprise, and NYM, the "Company" or the "Debtors"), residing in Vancouver, Canada.

## INTRODUCTION

2. The Company is a specialty retailer based in and managed from Vancouver, British Columbia, which offers a broad range of fashion apparel, accessories, jewellery and homeware under the "Oak + Fort" brand through its e-commerce websites and 42 retail stores in Canada and the United States.

---

[1] The Debtors in these Chapter 15 cases, along with the last four digits of each Debtor's U.S. Federal Employer Identification Number ("FEIN") or Canada Revenue Agency Business Number ("BN"), are: Oak and Fort Corp. (BN 0003); 1282339 B.C. Ltd. (BN 0001); Oak and Fort US Group, Inc. (FEIN 1236); Oak and Fort Enterprise (U.S.), Inc. (FEIN 0468), NYM Merger Holdings LLC (FEIN 6949), and Oak and Fort California, LLC (FEIN 6937). The Debtors' headquarters are located at 100-7 East 6th Ave, Vancouver, British Columbia, Canada.

3. Currently, for reasons discussed below, the Company is facing significant liquidity constraints and is in default of obligations to its creditors, including secured creditors, suppliers and landlords. As a result of concerns over the imminent threat of their landlords' intention to take enforcement steps, on June 2 and 3, 2025, each of the Debtors filed a Notice of Intention to Make a Proposal (each, an "NOI") with the Office of the Superintendent of Bankruptcy under Part III of the *Bankruptcy and Insolvency Act*, RSC 1985, c B-3 (the "BIA", and such proceedings the "NOI Proceedings").

4. Given the urgency with which relief from landlords' enforcement was required, the Debtors' senior management, in consultation with their Chief Restructuring Officer (the "CRO") determined to commence the NOI Proceedings, which imposed an automatic stay under the BIA, with a view to converting to proceedings under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "CCAA") and thereafter seeking recognition of CCAA proceedings under chapter 15 of the United States Bankruptcy Code.

5. On June 6, 2025, the Debtors filed applications in the Supreme Court of British Columbia (the "Canadian Court") to convert the NOI Proceedings into proceedings under the CCAA. The same day, the Canadian Court issued an Order (the "Initial CCAA Order") which, among other things, (a) commenced jointly administered proceedings for the Debtors under the CCAA (the "Canadian Proceedings"); (b) appointed KSV Restructuring Inc. ("KSV") as monitor (in such capacity, the "Monitor") pursuant to the CCAA to, among other things, assist the Debtors in their business and financial affairs in accordance with section 23 of the CCAA and the terms of the Initial CCAA Order; and (c) authorized and empowered KSV to act as representative of the Debtors in the CCAA proceedings and any foreign proceedings, including for purposes

prosecuting chapter 15 petitions for relief in the United States (in such capacity, the "Foreign Representative").  A copy of the Initial CCAA Order is attached hereto as **Exhibit A**.

6. Promptly following the issuance of the Initial CCAA Order, on June 6, 2025 (the "Petition Date"), the Foreign Representative filed on behalf of the Debtors petitions for recognition of the Canadian Proceedings in the United States under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the Debtors' chapter 15 cases (the "Chapter 15 Cases").  The Foreign Representative also filed, among other pleadings, the *Verified Petition for Entry of Order Recognizing Foreign Main Proceedings and Granting Additional Relief* (the "Petition for Recognition") and the *Motion of KSV Restructuring Inc. as Foreign Representative of Oak and Fort Corp. and its Affiliates for an Order Granting Provisional Relief* (the "Provisional Relief Motion").

7. This declaration is filed in support of the Petition for Recognition, the Provisional Relief Motion and the other "first day" relief requested by the Foreign Representative.  I am making this declaration in accordance with section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.

8. As the Company's founder, director, and CEO, I am familiar with the Debtors' history, day-to-day operations, assets, financial condition, business affairs and books and records.  Except as otherwise indicated, all statements in this declaration are based upon (a) my personal knowledge, (b) my review of the Debtors' books and records, relevant documents and other information prepared or filed in connection with the Canadian Proceedings and the Chapter 15 Cases, (c) information supplied to me by the officers and employees of the Debtors or other professionals retained by the Debtors  or (d) my experience and knowledge of the Debtors' operations and financial condition.  If called to testify as a witness, I could and would competently

3

testify to each of the facts set forth herein based upon my personal knowledge, review of documents or opinion. I am authorized to submit this declaration on behalf of the Debtors.

## BACKGROUND

### A. History and Corporate Structure

9. O&F Canada is a Canadian corporation incorporated in Alberta corporation and extra-provincially registered in British Columbia, Manitoba and Ontario, with its sole office in Vancouver. I own 100% of the voting shares of O&F. All of the Debtors' retail stores in Canada are operated by O&F Canada.

10. O&F Canada's wholly owned subsidiary, B.C. Ltd. is a Canadian corporation incorporated in British Columbia. B.C. Ltd. is also involved in the "Oak + Fort" business enterprise.

11. O&F U.S. is a wholly-owned subsidiary of O&F Canada incorporated in the State of Nevada. O&F U.S. is the parent holding company of the Debtors' operations in the United States. O&F U.S. is purely a holding company and has no business activity or operations.

12. O&F Enterprise is a wholly-owned subsidiary of O&F U.S. incorporated in the State of Nevada. O&F Enterprise is the operating company which holds leases and facilitates payments for the Debtors' U.S. warehouse operations.

13. NYM Merger is a wholly-owned subsidiary of O&F Enterprise incorporated in the State of New York. NYM holds the contracts and assets for store locations outside of California and employs the Debtors' employees at those locations.

14. O&F California (collectively, O&F California, O&F US, O&F Enterprise, and NYM Merger, the "Non-Canadian Debtors") is a wholly-owned subsidiary of O&F Enterprise

4

incorporated in the State of California. O&F California holds the contracts and assets for store locations within California, and employs the Debtors' California-based employees.

15. Attached hereto as **Exhibit B** is a true copy of the Debtors' corporate organization chart.

16. As closely held companies, the Company has a limited board of directors. There are two directors on the board of O&F Canada, myself and my husband Arjuna Thiagarajah. My sister Minju Kang, and I are directors of B.C. Ltd. I am the sole director of the Non-Canadian Debtors.

B. **Business Operations**

17. O&F Canada is the main operating entity for the Debtors' business, while the Non-Canadian Debtors have been incorporated in order to facilitate the sale of apparel to U.S. customers online and at U.S. retail locations. All of the Debtors' operations, both in Canada and in the U.S., are managed directly from the Company's headquarters in Vancouver, British Columbia.

18. In particular, the Debtors' finance, accounting, IT, marketing, and administrative teams operate exclusively from Vancouver, managing all financial reporting, banking relationships, technology systems, and corporate strategies. The supply chain and product management functions, including vendor relations, procurement, and product development, are similarly directed from the Company's Vancouver headquarters. All purchasing flows through O&F's Canadian operations, with purchase orders being issued by its Vancouver team to its Canadian business unit before being directed to its U.S. entity, O&F Enterprise. This centralized operational structure, with many back-office functions, executive leadership and board decisions all made at its Vancouver headquarters, demonstrates that the Debtors' core business activities and decision-making authority reside entirely within its Vancouver-based organization.

5

19. The Company operates 42 retail stores (26 in Canada and 16 in the U.S.), which account for approximately 85% of its total revenues over the past year. The e-commerce websites account for the remaining 15% of total revenues. The following table summarises the geographic location of Oak + Fort stores as at the date of the Petition Date:

| Province/State | Number of Stores |
|---|---|
| British Columbia | 9 |
| Alberta | 3 |
| Manitoba | 1 |
| Ontario | 13 |
| California | 6 |
| Washington | 1 |
| Illinois | 2 |
| Texas | 1 |
| New York | 2 |
| New Jersey | 1 |
| Massachusetts | 1 |
| Virginia | 1 |
| Pennsylvania | 1 |

20. All Oak + Fort stores are located in shopping malls or in downtown areas which are historically highly attractive retail spaces.

21. Since its inception in 2010, "Oak + Fort" has thrived as a direct-to-consumer brand, achieving strong sales and sustained growth for many years without external funding. The Company was self-generated, driven by disciplined execution and a focus on profitability. It

6

maintained consistent growth, re-investing its profits to scale the brand organically, while carefully managing its financial health. The Company's disciplined approach allowed it to grow strategically in its early years, without overextending its resources.

22. During the post-pandemic economic recovery commencing in or around late 2021, the Company experienced a surge in sales. The Company sought to capitalize on favourable real estate opportunities during this time and pursued an aggressive brick-and-mortar expansion strategy between 2021 and 2024. During this four-year period, Company opened 14 new stores in Canada and 12 new stores in the U.S. The focus on expanding the brand's physical retail locations resulted in a reduced investment, and indeed an under-investment, in the e-commerce platforms during this time.

23. Particularly after the Company's physical store expansion in the U.S. market, it encountered significant operational and sales challenges. Despite its prior success in the Canadian market, the complexities of scaling in a much larger and highly competitive market like the U.S., coupled with unforeseen macroeconomic and logistical hurdles, strained its financial stability.

24. The recent change in the U.S. trade landscape has directly caused an increase in supply chain and import costs. More specifically, the tariffs the U.S. has placed on China, where 68% of the Company's products are produced, have heavily eroded margins. The Company's costs have been high relative to revenue, resulting in negative gross margins in recent months.

25. These tariffs have also created uncertainty in financial markets. Many traditional financing parties have become increasingly risk-averse due to the broader economic uncertainties, leading to tightened lending conditions, and reduced availability of credit. Concerns over lenders' own portfolio exposures have resulted in stricter terms, higher costs or outright rejections, leaving the Company without viable refinancing options.

7

26. At this time, the Company is unable to raise additional capital through equity and its existing secured creditors are unwilling to advance additional funds. The Company is in the process of finalizing DIP financing to support its operations and reorganization efforts during the Canadian Proceedings.

C. **Value and Potential of the Oak + Fort Business**

27. Despite the Company's liquidity challenges and operating losses, I believe it has significant value. As will be further detailed below, the financial difficulties the Company is currently experiencing are largely driven by market conditions and have largely arisen over the course of the last year. I believe that, as a Canadian apparel brand with a 15-year history, "Oak + Fort" has significant brand value and customer goodwill. Through its grassroots efforts, the brand has built a loyal customer base, the majority of which are subscribed to the brand's marketing channels. The brand is a well-known name in its core markets, especially throughout Canada.

28. To respond to its market challenges and financial difficulties, the Company has been working to reduce its costs and pursue a number of strategic options. To assist with those efforts, O&F Canada engaged Reflect Advisors, LLC ("Reflect") on May 16, 2025, to act in the capacity of CRO.

29. In August 2024, O&F completed the first phase of a digital transformation strategy, which included an improved omnichannel customer platform, to better position the brand for online growth. Since then, the Company has experienced significant year-to-year revenue increases in its online sales.

30. As a part of its restructuring efforts prior to the Petition Date, the Company sought to enter into payment plan arrangements with its vendors to better align payment terms with cash flow. O&F has also engaged in extensive discussions with a number of landlords in Canada and in

8

the U.S. to negotiate improved lease terms, the particulars of which are further detailed below. O&F has also undertaken a comprehensive capital raising process to seek to stabilise its balance sheet, but was unable to finalise funding arrangements before its landlords began threatening imminent enforcement.

31. I believe that, if given time to implement strategic cross-border cost-reduction and restructuring efforts, the Company can better realign its operations and finances to overcome its current financial difficulty and emerge from these insolvency proceedings with a healthier balance sheet and sustainable business poised for long-term success.

**D.  Management**

32. As I stated above, the business operations of the Debtors are collectively managed by O&F Canada from Vancouver. There are no management personnel employed in the U.S.

33. The current members of senior management are:

| **Name** | **Office/Title** | **Location** |
|---|---|---|
| Min Kang | Founder and Chief Executive Officer | Vancouver, BC |
| Melorin Pouladian | Chief Operating Officer | Vancouver, BC |

34. Also, as I mentioned, the Company has engaged Reflect as CRO, which engagement has been approved by the Canadian Court in the Initial CCAA Order.

35. Since the founding of O&F Canada's predecessor by amalgamation in 2010, I have had primary responsibility for the direction of the Company's corporate, management and strategic functions, including overseeing the team that manages the Company's bank accounts and accounting functions, all of which are managed from the Vancouver headquarters. The Company's only finance personnel are based in Vancouver. In addition, I oversee the team that is responsible for product design and development for Oak + Fort.

9

### E. Employees

36. As of the Petition Date, the Debtors have approximately 601 employees. O&F Canada employs 434 people in Canada, 121 of which work at the Vancouver headquarters, and 313 at retail stores across Canada. The Non-Canadian Debtors employ 167 people for the operation of the U.S. retail stores. As of the Petition Date, the Debtors are current on their payroll and remittance obligations.

### F. Owned and Lease Real Property

37. The Debtors do not own any real property.

38. O&F Canada holds leases for its 26 Canadian retail store locations, it headquarters office space in Vancouver, and a warehouse in Surrey, British Columbia.

39. The Non-Canadian Debtors hold leases for the 16 U.S. retail store locations, including a lease for the Garden State Plaza store in New Jersey which is now closed, as well as a lease for warehouse facilities in California.

40. The Company has been unable to pay rent for several months. O&F currently owes approximately CAD $2,778,000 in unpaid rent for the Canadian retail stores. The Foreign Entities collectively owe approximately CAD $4,276,000 in respect of rent for the U.S. retail stores.

41. Senior management has been in discussions with landlords regarding deferred rental payments and improved lease terms. While some of the landlords have expressed willingness to work with O&F to address its needs, O&F has not yet finalized any formal rent relief arrangements. As detailed below, the Company's failure to pay rent due and owing as of May 30, 2025 has caused certain landlords (primarily U.S. landlords) to threaten immediate enforcement steps, including tenant lock-out and seizure of inventory, which precipitated the commencement of the NOI Proceedings.

### G. Cash Management System

42. The Debtors' business and financial affairs require the collection, disbursement, and movement of funds through several bank accounts throughout Canada and the U.S. In the ordinary course of business, the Debtors use a centralized cash management system (the "Cash Management System") in order to, among other things, collect funds and pay operational expenses.

### H. Assets and Liabilities

43. As a private company, the Debtors maintain internal, unaudited consolidated and standalone financial statements for O&F Canada. None of the other Debtors prepare separate financial statements.

#### a. Assets

44. In addition to its intellectual property (namely, the "Oak + Fort" trademark, which has been registered in Canada, the U.S. and various European jurisdiction), the Company's main assets consist of its inventory. The book value of inventory held by the Petitioners is approximately CAD $13.9 million.

#### b. Liabilities

45. As of the Petition Date, the Company has approximately CAD $25.08 million in outstanding indebtedness, as follows:

| $CAD | Secured Debt | Unsecured Debt |
|---|---|---|
| **Canadian Entities** | $3.19 million | $17.35 million |
| **U.S. Entities** | | $4.59 million |

11

**I.     Debt Structure**

      **a.  Secured Debt**

46.     O&F Canada is the primary entity which facilitates financing for all of the Debtors. O&F's secured creditors are the Business Development Bank of Canada ("BDC"), Royal Bank of Canada ("RBC") as successor in interest to HSBC Bank Canada, and Shopify Inc. ("Shopify" and collectively, the "Secured Creditors").

47.     The indebtedness owing by O&F Canada to the Secured Creditors is secured through general security agreements pursuant to which O&F Canada pledged its present and after-acquired personal property to each of the Secured Creditors as collateral security for its obligations. Further, O&F Canada's obligations to BDC are guaranteed by the Non-Canadian Debtors, and these guarantee obligations are secured pursuant to certain general security agreements pledged by the Non-Canadian Debtors. Each of the BDC and RBC loan and security agreements are governed by Canadian law.

      **b.  Unsecured Debt**

48.     In addition to the indebtedness owing to the Secured Creditors, O&F Canada also owes approximately CAD $17.35 million to unsecured creditors, of which approximately CAD $2.79 million is owing to landlords in Canada. The balance of O&F Canada's unsecured debt is owing to utilities and other service providers.

49.     The Non-Canadian Debtors have approximately CAD $4.59 million of unsecured indebtedness, of which approximately CAD $4.28 million is owing to landlords in the U.S.

50.     Beginning in February 2024, the Company encountered financial constraints that temporarily impacted its ability to meet rental payment obligations for certain properties.

12

51. In May 2024, the Company resumed on-time rent payments across all properties while simultaneously addressing any deferred amounts from the prior period. Through disciplined financial management, it successfully cleared all outstanding arrears by the end of December 2024, fulfilling its repayment commitments to landlords.

52. Beginning in January 2025, the Company again faced cash flow constraints, necessitating further discussions with select landlords regarding additional rent deferments. Management has been engaged in extensive discussions with a number of Canadian and U.S. landlords seeking to structure temporary payment relief, balancing partial arrears payments with requests for extended timelines on deferred amounts. While several landlords had expressed a willingness to provide certain concessions, the Company was unable to finalize negotiations for any such relief before the end of May 2025, when rents came due.

53. As indicated, management, with the assistance of the CRO, has also been in discussions with potential DIP lenders, and those discussions remain ongoing as of today.

54. Due to the non-payment of rent at most of the Company's retail locations, a number of landlords – primarily those of U.S. store locations – expressed reluctance to provide concessions and threatened to take steps to enforce the Company's obligations.

55. As a result of concerns around imminent enforcement by landlords, the Company commenced the NOI Proceedings in order to obtain an immediate stay of proceedings.

**CIRCUMSTANCES LEADINGS TO THE INSOVLENCY PROCEEDINGS**

56. As briefly summarised above, beginning in or around late 2021, the Company pursued an aggressive brick-and-mortar growth strategy, which included the opening of 26 physical retail locations. Following those growth efforts, the Company's revenues grew both in Canada and in the U.S., but not to the extent anticipated. Furthermore, Canadian apparel retailers

13

were already operating in a high-cost environment relative to their U.S. peers, and costs relative to revenue increased sharply in response to changing market conditions in the past year, including increased interest rates, inflationary pressures, and impacts and uncertainty arising from the recent U.S. tariff regime. At the same time, retailers, including the Company, experienced a decline in consumer demand.

57. While the Company has attempted to mitigate losses through inventory reductions and various cost-cutting measures, these efforts accelerated revenue decline and margin erosion.

58. Despite the Company's financial challenges, senior management is confident that the enterprise has significant value. "Oak + Fort" is a Canadian, woman-founded brand with 15 years of history and name recognition in Canada, with a solid presence and recognition in major U.S. markets. The financial difficulties currently facing the business have arisen only in the past year and, in senior management's view, can be overcome with additional time to realign operations to focus on select profitable retail locations and e-commerce, and secure long-term funding to support the realigned business.

59. At the time of commencing the Canadian Proceedings, the Company's intention was, and remains, to seek flexibility and time to restructure its business in the context of a formal cross-border insolvency process. The Company's intention is to identify and implement additional cost-reduction options within the Canadian Proceedings that will enable it to right-size its operations and expenses while pursuing financing that will enable it to complete a restructuring for the benefit of its stakeholders and which will enable it to emerge as a stronger enterprise. The CRO will be assisting with the Company's restructuring, in consultation with the Monitor.

14

## THE CHAPTER 15 CASES

### A.  The Debtors are Eligible for Chapter 15 Relief

60. It is my understanding, based on discussions with the Foreign Representative's U.S. counsel, that in order to be eligible for chapter 15 relief in the Second Circuit the Debtors must satisfy Bankruptcy Code section 109(a), which requires that the Debtors have either (a) a domicile, (b) a place of business, or (iii) property in the United States.

61. I believe that the Debtors satisfy this requirement. The Non-Canadian Debtors are incorporated in New York, Nevada, and California, respectively, and have assets and operations in the United States. Also, all the Debtors, including the Canadian Debtors, have funded retainers held in U.S. counsel's attorney trust account in New York.

### B.  Need for Provisional Relief

62. The Debtors urgently require provisional stay relief from this Court to preserve value for the benefit of the Company's stakeholders. The Company is facing continuing, imminent threat by certain U.S. landlords to terminate the Debtors' valuable leases and exercise remedies under the leases and applicable law. The effect of such actions by U.S. landlords would be to irreparably harm the "Oak + Fort" brand and would significantly erode the enterprise value of the O&F Group's business.

### C.  Recognition of the Canadian Proceedings

63. I am advised that the Foreign Representative must establish that the Canadian Proceeding is either a "foreign main proceeding" or a "foreign nonmain proceeding" within the meaning of Bankruptcy Code section 1502 in order for the Canadian Proceeding to be "recognized" under Bankruptcy Code section 1517(a).

64. I understand that under Bankruptcy Code section 1502, a "foreign main proceeding" means a foreign proceeding pending in the country where the debtor has its "center

of main interests," also referred to as "COMI." I am advised that courts consider various factors when determining COMI (with no one factor being dispositive), including the debtor's "nerve center," including the location of those who actually manage the debtor, and where the debtor's activities are directed and controlled; the location of the debtor's headquarters, primary assets, and creditors, and the expectation of creditors; and the jurisdiction whose law would apply to most disputes.

65.   I submit that the facts set forth herein support the conclusion that the Debtors' COMI is Canada. With respect to the Canadian Debtors, I understand that their COMI is presumed to be in Canada. I believe the Non-Canadian Debtors' COMI is also in Canada.

66.   I believe the Debtors' "nerve center" is clearly in Canada. As I discussed above, all of the Debtors' operations, both in Canada and the United States, are managed directly from the Company's sole office in Vancouver, British Columbia. The Debtors have no other offices. The Debtors employ no management personnel in the United States. Ms. Pouladian and myself, along with the CRO, comprise the Company's senior management and we are all located in Vancouver. Since founding the Company, I have overseen product design and development and has had primary responsibility for the Company's corporate, management and strategic functions, including overseeing the team that manages the Company's bank accounts and accounting functions, all of which are managed from the Vancouver office.

67.   Also, as I explained above, the Company's finance, accounting, IT, marketing, and administrative teams operate exclusively from Vancouver, managing all financial reporting, banking relationships, technology systems, and corporate strategies. The supply chain and product management functions, including vendor relations, procurement, and product development, are similarly directed from the Company's Vancouver office. All purchasing flows through the

16

Company's Canadian operations, with purchase orders issued by its Vancouver team to its Canadian business unit before being directed to its U.S. entity, O&F Enterprise.

68. Furthermore, for similar reasons, the expectations of the Non-Canadian Debtors' creditors weighs in favor of finding their COMI is in Canada. The Non-Canadian Debtors' U.S. based creditors, including landlords and vendors, all deal with the Company's senior management and employees out of the Company's Vancouver headquarters. Me and my team in Vancouver have been the regular point of contact with the Debtors' U.S. landlords regarding lease negotiations. Further, as noted, the Company's supply chain and product management functions, including vendor relations, procurement, and product development, are similarly directed from the Company's Vancouver office. Thus, the Non-Canadian Debtors' creditors understand that the Company is a Canadian brand and Vancouver-based organization. I would expect the Non-Canadian Debtors' creditors to assume that Debtors' main insolvency proceeding would take place in Canada.

69. In sum, each of the Non-Canadian Debtors are dependent upon and rely entirely on the support and assistance of O&F Canada. It is my team at O&F Canada's headquarters who provide direction and execution of all aspects of the operation, implement the use of the Company's intellectual property to design, order and procure merchandise for all the stores and develop marketing strategies for the sale of product. While, for convenience the Non-Canadian Debtors may be the purchasing party of inventory sold in U.S. stores, it is nothing more than that.

70. Moreover, the Non-Canadian Debtors are guarantors of O&F Canada's obligations under its financing facilities with BDC, which guarantee obligations are secured by substantially all the Non-Canadian Debtors' assets. The loan and security agreements with BDC is governed by Canadian law.

71. For all these reasons, I believe the Non-Canadian Debtors' COMI is located in Canada.

*[Signature Page to follow]*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated June 7, 2024

                                                                                  /s/ Min Gyoung Kang
                                                                                   Min Gyoung Kang