**COLE SCHOTZ P.C.**
Warren A. Usatine
Mark Tsukerman
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| OAK AND FORT CORP., *et al.*,[1] | Case No. 25-11282 (MG) |
| Debtors in a Foreign Proceeding. | Joint Administration Requested |

**VERIFIED PETITION FOR ENTRY OF**
**ORDER RECOGNIZING FOREIGN MAIN**
**PROCEEDINGS AND GRANTING ADDITIONAL RELIEF**

KSV Restructuring Inc. ("KSV"), in its capacity as the Canadian Court-appointed monitor and duly authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (the "Debtors"), which are the subject of jointly-administered proceedings under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "CCAA") in the Supreme Court of British Columbia, in Vancouver, British Columbia, Canada (the "Canadian Proceedings" and such court, the "Canadian Court"), filed chapter 15 petitions for each of the Debtors (the chapter 15 petitions, together with this Verified Petition, the "Petitions"), and respectfully states as follows:

---

[1] The Debtors in these Chapter 15 cases, along with the last four digits of each Debtor's U.S. Federal Employer Identification Number ("FEIN") or Canada Revenue Agency Business Number ("BN"), are: Oak and Fort Corp. (BN 0003); 1282339 B.C. Ltd. (BN 0001); Oak and Fort US Group, Inc. (FEIN 1236); Oak and Fort Enterprise (U.S.), Inc. (FEIN 0468), NYM Merger Holdings LLC (FEIN 6949), and Oak and Fort California, LLC (FEIN 6937). The Debtors' headquarters are located at 100-7 East 6th Ave, Vancouver, British Columbia, Canada.

1

**RELIEF REQUESTED**

1. The Foreign Representative has commenced these chapter 15 cases as ancillary proceedings to the Canadian Proceedings and respectfully files this Verified Petition contemporaneously with the required accompanying documentation pursuant to sections 1504 and 1515 of title 11 of the United States Code (the "Bankruptcy Code").

2. The Foreign Representative requests that this Court enter an order, substantially in the form of the proposed order attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 362, 365(a), 365(e), 1504, 1507, 1509, 1510, 1515, 1517, 1520, 1521, and 1522 of the Bankruptcy Code, granting relief as set forth below (collectively, the "Relief Requested"):

    (a)    recognizing the Canadian Proceedings, pursuant to Bankruptcy Code section 1517, as "foreign main proceedings" or, in the alternative, as "foreign nonmain proceedings," as such terms are defined in Bankruptcy Code sections 1502(4) and 1502(5), respectively;

    (b)    recognizing the Foreign Representative as the "foreign representative," as defined in section 101(24) of the Bankruptcy Code, in respect of the Canadian Proceedings;

    (c)    recognizing and giving full force and effect in the United States to the initial order issued on June 6, 2025, by the Canadian Court (the "Initial CCAA Order")[2] and any and all existing and future extensions, amendments, restatements, and/or supplements authorized by the Canadian Court;

    (d)    granting the Debtors all the relief afforded pursuant to section 1520 of the Bankruptcy Code, including but not limited to the "automatic stay" under section 362 of the Bankruptcy Code, which shall apply with respect to the Debtors and the Debtors' property that is now or in the future located within the territorial jurisdiction of the United States;

    (e)    granting certain additional and further relief pursuant to sections 1521 and 1507 (to the extent it is not granted automatically and as of right upon recognition of the Canadian Proceedings as foreign main proceedings pursuant to section 1520(a)), including extending on a final basis the provisional relief requested in the Provisional Relief Motion (as defined herein), and including an injunction prohibiting all persons and entities,

---

[2] A copy of the Initial CCAA Order was attached to each of the Petitions and is attached to the Kang Declaration (defined below).

2

   other than the Foreign Representative and his representatives and agents, from:

   i. execution against any of the Debtors' assets;

   ii. the commencement or continuation, including the issuance or employment of process, of a judicial, quasi-judicial, administrative, arbitral, or other action or proceeding, or to recover a claim, including, without limitation, any and all unpaid judgments, settlements or otherwise against the Debtors, which in either case is in any way related to, or would interfere with, the administration of the Debtors' estates in the Canadian Proceedings;

   iii. taking or continuing any act to create, perfect or enforce a lien or other security interest, setoff or other claim against the Debtors or any of their property or proceeds thereof;

   iv. transferring, relinquishing or disposing of any property of the Debtors to any person or entity other than the Foreign Representative;

   v. commencing or continuing an individual action or proceeding concerning the Debtors' assets, rights, obligations or liabilities; and

   vi. declaring or considering the insolvency of the Debtors, the Initial CCAA Order, the Provisional Relief Order, the Proposed Order or the filing of the Canadian Proceedings or these Chapter 15 Cases a default or event of default under any agreement, contract or arrangement;

   *provided*, in each case, that such injunctions shall be effective solely within the territorial jurisdiction of the United States; and *provided, further*, that nothing herein shall: (a) prevent any entity from filing any claims against the Debtors in the Canadian Proceedings or (b) prevent any entity from seeking relief from the Canadian Court in the Canadian Proceedings or, to the extent applicable, this Court in these Chapter 15 Cases for relief from the injunctions contained in the Proposed Order;

(f) granting comity and giving full force and effect to the Canadian Proceedings; and

(g) granting the Foreign Representative such other and further relief as this Court deems just and proper.

3

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and the *Amended Standing Order of Reference to Bankruptcy Judges of the District Court for the Southern District of New York*, dated January 31, 2012 (Preska, C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

4. These chapter 15 cases have been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of the Petitions in accordance with section 1515 of the Bankruptcy Code.

5. Venue in this district is proper pursuant to 28 U.S.C. § 1410(1) and (3).

## BACKGROUND

6. Established in 2010, Oak and Fort Corp. ("**O&F Canada**") is a Canadian specialty retailer based in and managed from Vancouver, British Columbia which, together with its direct and indirect subsidiaries operating on a consolidated basis (collectively, the "**Company**"), offers a broad range of fashion apparel, accessories, jewellery and homeware under the "Oak + Fort" brand through its e-commerce websites and 42 retail stores in Canada and the United States.

7. The Company presently is facing significant liquidity constraints and is in default of obligations to its creditors, including secured creditors, suppliers and landlords. As a result of concerns over the imminent threat of their landlords' intention to take enforcement steps, on June 2 and 3, 2025, each of the Debtors filed a Notice of Intention to Make a Proposal (each, an "NOI") with the Office of the Superintendent of Bankruptcy under Part III of the *Bankruptcy and Insolvency Act*, RSC 1985, c B-3 (the "BIA", and such proceedings the "NOI Proceedings").

8. On June 6, 2025, the Debtors filed applications to convert the NOI Proceedings into proceedings under the CCAA in order to, among other things, administratively consolidate the Debtors' proceedings and facilitate a cross-border insolvency process in the United States. The

4

same day, the Canadian Court issued the Initial CCAA Order, which, among other things, (a) converted the NOI Proceedings to proceedings under the CCAA; (b) appointed KSV as monitor pursuant to the CCAA to, among other things, assist the Debtors in their business and financial affairs in accordance with section 23 of the CCAA and the terms of the Initial CCAA Order; and (c) authorized and empowered KSV to act as a representative of the Debtors in the CCAA proceedings and any foreign proceedings, including for purposes prosecuting chapter 15 petitions for relief in the United States.

9. Promptly upon receipt of the Initial CCAA Order, on June 6, 2025 (the "Petition Date"), the Foreign Representative filed the Petitions under chapter 15 of the Bankruptcy Code for recognition of the Canadian Proceedings, thereby commencing the Debtors' chapter 15 cases (the "Chapter 15 Cases").

10. Additional information about the Debtors' business and operations, the events leading up to the filing of the Petitions, and the facts and circumstances surrounding the Canadian Proceedings and these chapter 15 proceedings are set forth in the contemporaneously filed *Declaration of Min Gyoung Kang in Support of Verified Petition for Entry of an Order Recognizing Foreign Main Proceedings and Granting Additional Relief* (the "Kang Declaration"). The Kang Declaration is incorporated herein by reference.[3]

## BASIS FOR RELIEF

11. The relief requested is based on the provisions of chapter 15 of the Bankruptcy Code. The purpose of chapter 15 is to "incorporate the Model Law on Cross-Border Insolvency (the "Model Law") so as to provide effective mechanisms for dealing with cases of cross-border insolvency." 11 U.S.C. § 1501(a). In interpreting chapter 15, a court is to "consider its

---

[3] Capitalized terms used but not defined herein have the meanings assigned to them in the Kang Declaration.

5

international origin, and the need to promote an application of [chapter 15] that is consistent with the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. § 1508.

12. Consistent with these principles, the Foreign Representative commenced these Chapter 15 Cases as ancillary proceedings to obtain recognition of the Canadian Proceedings with the ultimate goal of giving effect in the United States to the Debtors' Canadian restructuring.

13. In the interim, the Foreign Representative seeks recognition of the Initial CCAA Order on a provisional basis as further set forth in the *Motion of KSV Restructuring Inc., as Foreign Representative of Oak and Fort Corp. and Its Affiliates, for an Order Granting Certain Provisional Relief* (the "Provisional Relief Motion," and any order or orders granting such motion, the "Provisional Relief Order") filed contemporaneously herewith.

14. Furthermore, the Foreign Representative submits that recognition of the Canadian Proceedings will not undermine the rights of U.S. creditors. All creditors of the Debtors, including those in the United States, will have the opportunity to assert their claims or rights in the Canadian Proceedings and are sufficiently protected as they are expected to receive substantially similar treatment under the Canadian Proceedings as they would in bankruptcy proceedings in the United States. As the Canadian Proceedings were just commenced and in their infancy, the Chapter 15 Cases will also provide U.S. creditors notice and ample opportunity to assert their rights in the Canadian Proceedings.

**I. Recognition of the Canadian Proceeding as Foreign Main Proceedings and KSV as Its Foreign Representative is Appropriate**

15. Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if (i) the foreign representative applying for recognition is a person or body; (ii) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; and

6

(iii) the petition meets the requirements of section 1515 of the Bankruptcy Code. *See* 11 U.S.C. § 1517. Each of the foregoing requirements has been satisfied, as described below.

        **A.**        **The Canadian Proceedings Are Foreign Main Proceedings or, in the Alternative, Foreign Nonmain Proceedings**

16.        In order to apply for recognition of the Canadian Proceedings under section 1515(a) of the Bankruptcy Code, two principal requirements must be satisfied: (i) the Canadian Proceedings must qualify as "<u>foreign proceedings</u>" and (ii) KSV must qualify as a "<u>foreign representative.</u>" Both requirements are satisfied here.

        *a.*        <u>*The Chapter 15 Cases Concern Foreign Proceedings*</u>

17.        As an initial matter, the Canadian Proceedings satisfy the definition of "foreign proceedings" set forth in Bankruptcy Code section 101(23), which defines "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).

18.        There can be little doubt the Canadian Proceedings satisfy the requirements of section 101(23). The Canadian Proceedings are collective judicial proceedings in which the assets and affairs are subject to the supervision of the Canadian Court. The CCAA provides for a controlled reorganization or liquidation designed to enable financially distressed companies to maximize value for the benefit of stakeholders.

19.        Given, among other things, the similarities between the CCAA and chapter 11, U.S. courts have routinely and consistently held that Canadian restructuring proceedings under the CCAA satisfy section 101(23)'s requirements. *See, e.g.*, *Ted Baker Canada Inc.*, No. 24-10699 (MEW) (Bank. S.D.N.Y. May 17, 2024) [Docket No. 54]; *In re Inscape Corp.*, No. 23-10074

(MEW) (Bankr. S.D.N.Y. March 1, 2023) [Docket No. 22]; *In re Nygard Holdings (USA) Ltd.*, No. 20-10828 (DSJ) (Bankr. S.D.N.Y. April 23, 2020) [Docket No. 40]; *In re Imperial Tobacco Canada Ltd.*, No. 19-10771 (JPM) (Bankr. S.D.N.Y. April 17, 2019) [Docket No. 40]; *In re U.S. Steel Canada, Inc.,* No. 17-11519 (MG) (Bankr. S.D.N.Y. July 31, 2017) [Docket No. 16].

        b.    <u>The Chapter 15 Cases Have Been Commenced by a Duly Authorized Foreign Representative</u>

20.    The Foreign Representative is duly authorized to serve in its capacity as a foreign representative in these Chapter 15 Cases. The term "foreign representative" is defined under section 101(24) of the Bankruptcy Code as:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

21.    Pursuant to the Initial CCAA Order, the Canadian Court appointed KSV as the Foreign Representative, and authorized and empowered the Foreign Representative to (i) act as a foreign representative in respect of the Canadian Proceedings, and (ii) to file chapter 15 cases in the United States for the purpose of having the Canadian Proceedings recognized. Moreover, pursuant to section 1516(a) of the Bankruptcy Code, the Foreign Representative is presumed to be the foreign representative because it was identified as such in the Initial CCAA Order. Accordingly, the Foreign Representative is a proper "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code.

        c.    <u>The Canadian Proceedings Should Be Recognized as Foreign Main Proceedings</u>

8

22. The Bankruptcy Code provides that a foreign proceeding for which chapter 15 recognition is sought must be recognized as a "<u>foreign main proceeding</u>" if it is pending in the country where the debtor has its center of main interests.  11 U.S.C. §§ 1517(b)(1), 1502(4).

23. The Bankruptcy Code neither defines nor provides a conclusive test for determining the location of a debtors' "center of main interests" or "COMI."  Although there is a statutory presumption that a debtor's "registered office" is its COMI "in the absence of evidence to the contrary," *see* 11 U.S.C. § 1516(c), the legislative history makes clear that presumption is rebuttable and that the rule of the "registered office," *i.e.,* "place of incorporation," is "designed to make recognition as simple and expedient as possible" in cases where the facts are not controversial rather than to establish a conclusive presumption.  H.R. Rep. No. 109-31, pt. 1, at 112-13 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 175.  Thus, the court in *In re Bear Stearns* observed:

> This presumption permits and encourages fast action in cases where speed may be essential, while leaving the debtor's true 'center' open to dispute in cases where the facts are more doubtful . . . . This presumption is *not a preferred alternative where there is a separation between a corporation's jurisdiction of incorporation and its real seat*.
>
> Chapter 15 changed the Model Law standard that established the presumption in 'the absence of proof to the contrary', to a presumption in 'the absence of evidence to the contrary'. The legislative history explains that the word 'proof' was changed to 'evidence' to make it clearer using United States terminology that the ultimate burden is on the foreign representative . . . . Whatever may be the proper interpretation of the EU Regulation, the Model Law and Chapter 15 give limited weight to the presumption of jurisdiction of incorporation as the COMI.

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,* 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) (emphasis added, original emphasis and internal citations omitted); *see also In re Tri-Cont'l Exch. Ltd.,* 349 B.R. 627, 635 (Bankr. E.D. Cal. 2006) (similar view).

9

24.     To determine a debtor's COMI, courts have held that "the relevant principle … is that the COMI lies where the debtor conducts its regular business, so that the place is ascertainable by third parties." *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 136 (2d Cir. 2013).  In undertaking a COMI analysis, courts in this district have considered a list of non-exclusive factors, including "any relevant activities, including liquidation activities and administrative functions . . . , the location of the debtor's headquarters, the location of those who actually manage the debtor . . . , the location of the debtor's primary assets, the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes." *In re Suntech Power Holdings Co.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) (citing *Fairfield Sentry Ltd.*, 714 F.3d at 137).

25.     Courts also "consider the location of the debtor's 'nerve center,' 'including from where the debtor's activities are directed and controlled.'" *Suntech*, 520 B.R. at 416 (quoting *Fairfield Sentry Ltd.*, 714 F.3d at 138 n.10).  The "nerve center" test, as opposed to the "place of operations" test, seeks to ascertain:

> [T]he nerve center from which a corporation radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective. Under this test, courts focus on those factors that identify the place where the corporation's overall policy originates. The other test has been labeled the "place of operations" or "locus of operations" test. There, the effort is to identify the place in which a corporation conducts its principal operations. Courts generally apply the "nerve center" test when a corporation's operations are geographically widespread, and the "locus of operations" test when a corporation is centralized.

*Phoenix Four Inc. v. Strategic Res. Corp.,* 446 F. Supp. 2d 205, 214-15 (S.D.N.Y. 2006) (internal citations and quotations omitted).  The analysis of a foreign debtor's center of main interests is a flexible one, as "courts do not apply any rigid formula or consistently find one factor dispositive." *In re Betcorp Ltd.*, 400 B.R. 266, 290 (Bankr. D. Nev. 2009).

10

26. Here, O&F Canada and 1282339 B.C. Ltd. (together, the "**Canadian Debtors**") are both Canadian corporations and, thus, their COMI is presumptively in Canada. Furthermore, as established in the Kang Declaration and discussed below, the remaining Debtors – *to wit*, Oak and Fort US Group Inc. ("**O&F US**"); Oak and Fort Enterprise (U.S.), Inc. ("**O&F Enterprise**"), NYM Merger Holdings LLC ("**NYM Merger**"), and Oak and Fort California LLC ("**O&F California**, and together with O&F US, O&F Enterprise, NYM Merger, and O&F California, the "**Non-Canadian Debtors**") – also maintain their COMI in Canada.

27. As discussed in the Kang Declaration and set forth below, O&F Canada is the main operating entity for all the Debtors, while the Non-Canadian Debtors (all direct or indirect subsidiaries of O&F Canada) were formed in the United States to allow the Company to sell apparel to U.S. customers online and at U.S retail locations. The Company has a total of 42 store locations, with 26 in Canada and 16 in the United States. Min Gyoung Kang, a Canadian resident, is the founder of the Company, CEO of all the Debtors, and 100% owner of O&F Canada. As closely held entities, the Debtors have a limited board of directors. Ms. Kang and her husband are the two directors of O&F Canada. And Ms. Kang and her sister are the directors of the other 1282339 B.C. Ltd., the other Canadian Debtor. Ms. Kang is the sole director of all the non-Canadian Debtors. The Company has approximately 434 employees in Canada and 167 in the United States.

28. The Non-Canadian Debtors' corporate structure is quite simple. As set forth in the Kang Declaration, O&F US, incorporated in Nevada, is the parent holding company for the other Non-Canadian Debtors. O&F Enterprise, also incorporated in Nevada, is an operating company that holds the leases and facilitates payment for the Company's U.S. based warehouse operations. NYM Merger, which is incorporated in New York, holds the contracts and assets for all U.S. store

11

locations outside of California and employs the Company's employees at those locations. O&F California, which is incorporated in California, holds the contracts and assets for the store locations within California and employs the California-based employees.

29. As set forth in the Kang Declaration, the Non-Canadian Debtors' "nerve center" clearly is located in Canada. All of the Debtors' operations, both in Canada and the United States, are managed directly from the Company's sole office in Vancouver, British Columbia. The Debtors have no other offices. The Debtors employ no management personnel in the United States. Ms. Kang and the Company's COO, Melorin Pouladian, comprise the Company's senior management and are both located in Vancouver. Since founding the Company, Ms. Kang has overseen product design and development and has had primary responsibility for the Company's corporate, management and strategic functions, including overseeing the team that manages the Company's bank accounts and accounting functions, all of which are managed from the Vancouver office.

30. The Company's finance, accounting, IT, marketing, and administrative teams operate exclusively from Vancouver, managing all financial reporting, banking relationships, technology systems, and corporate strategies. The supply chain and product management functions, including vendor relations, procurement, and product development, are similarly directed from the Company's Vancouver office. All purchasing flows through the Company's Canadian operations, with purchase orders issued by its Vancouver team to its Canadian business unit before being directed to its U.S. entity, O&F Enterprise. This centralized operational structure, with executive leadership and board decisions all made at its Vancouver office, demonstrates that all the Debtors' core business activities and decision-making authority reside entirely within its Vancouver-based organization.

12

31. Furthermore, for similar reasons, the expectations of the Non-Canadian Debtors' creditors weighs in favor of finding their COMI is in Canada. The Non-Canadian Debtors' U.S. based creditors, including landlords and vendors, all deal with the Company's senior management and employees out of the Company's Vancouver headquarters. As set forth the Kang Declaration, the Company's senior management – all based in Vancouver – has been the regular point of contact with the Debtors' U.S. landlords regarding lease negotiations. Further, as noted, the Company's supply chain and product management functions, including vendor relations, procurement, and product development, are similarly directed from the Company's Vancouver head office. And all purchasing flows through the Company's Canadian operations, with purchase orders issued by its Vancouver team to its Canadian business unit before being directed to its U.S. entity, O&F Enterprise. Thus, the Non-Canadian Debtors' creditors understand that the Company is a Canadian brand and Vancouver-based organization. And it is fair to infer that their creditors would expect the Debtors' main insolvency proceeding to take place in Canada.

32. Moreover, although the Non-Canadian Debtors have creditors and assets in the United States, they are guarantors of O&F Canada's obligations under its financing facilities with Business Development Bank of Canada ("BDC"), which guarantee obligations are secured by substantially all the Non-Canadian Debtors' assets. The loan and security agreements with BDC is governed by Canadian law.

33. As such, the Foreign Representative submits that all the Debtors have their center of main interests in Canada and, thus, the Canadian Proceedings qualify as "foreign main proceedings" as defined in section 1502(4) of the Bankruptcy Code.

34. Moreover, courts have previously recognized CCAA proceedings for non-Canadian entities as "foreign main proceedings" given that they were part of a jointly-administered

13

CCAA proceeding with their Canadian parent. *See, e.g.*, *Ted Baker Canada Inc.*, No. 24-10699 (MEW) (Bank. S.D.N.Y. May 17, 2024) [Docket No. 54]; *In re The John Forsyth Shirt Co. Ltd.*, Case No. 13-10526 (SCC) (Bankr. S.D.N.Y. Mar. 18, 2013) [Docket No. 24]; *In re Essar Steel Algoma Inc.*, Case No. 15-12271 (BLS) (Bankr. D. Del. Dec. 1, 2015) [Docket No. 97]; *In re Talon Sys. Inc.*, Case No. 13-11811 (KJC) (Bankr. D. Del. Aug. 30, 2013) [Docket No. 49]; *In re Arctic Glacier Int'l Inc.*, Case No. 12-10605 (KG) (Bankr. D. Del. Mar. 16, 2012) [Docket No. 70].

        d.    <u>In the Alternative, the Canadian Proceedings Should Be Recognized as Foreign Nonmain Proceedings</u>

35.    In the alternative, were this Court to deny recognition of any of the Canadian Proceedings as foreign main proceedings, it should grant recognition of such Canadian Proceedings as foreign nonmain proceedings.

36.    Pursuant to the Bankruptcy Code, a "foreign nonmain proceeding" is defined as a "foreign proceeding" pending in a country where the debtor has an "establishment" within the meaning of section 1502. 11 U.S.C. § 1517(b)(2). "Establishment" is broadly defined in the Bankruptcy Code as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2). To satisfy that definition, a debtor must have "a seat for local business activity in the foreign country" and this activity must have a "local effect on the marketplace." *In re Mood Media Corp.*, 569 B.R. 556, 561-62 (Bankr. S.D.N.Y. 2017). By way of example, an "establishment" may be shown by engagement of "local counsel and commitment of capital to local banks." *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 86-67 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 88 (S.D.N.Y. 2012).

37.    Here, the non-Canadian Debtors are operationally and functionally integrated with the Canadian Debtors. As discussed above, the supply chain and product management functions, including vendor relations, procurement, and product development, are directed from the

14

Company's Vancouver office. All purchasing flows through the Company's Canadian operations, with purchase orders issued by its Vancouver team to its Canadian business unit before being directed to its U.S. entity, O&F Enterprise. Furthermore, the Debtors' finances and cash management system involves the transfer of funds between banks in the U.S. and Canada and is managed out of its Vancouver headquarters.

38. For all these and other reasons highlighted above and discussed in the Kang Declaration, the Foreign Representative submits that the Court should find that each of the Debtors has an "establishment" in Canada within the meaning of Bankruptcy Code section 1502(2) and, if any of the Canadian Proceedings are not recognized as foreign main proceedings, this Court should recognize the Canadian Proceedings as foreign nonmain proceedings.

**B.    The Petitions Meet the Requirements of Bankruptcy Code Section 1515**

39. These Chapter 15 Cases were duly and properly commenced by filing the chapter 15 petitions and this Verified Petition accompanied by all fees, documents, and information required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, including: (i) a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1; (ii) a list containing (a) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtors, (b) all parties to litigation pending in the United States in which the Debtors are a party at the time of the filing of the chapter 15 petitions, and (c) all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code; (iii) a statement identifying all foreign proceedings with respect to the Debtors that are known to the Foreign Representative; and (iv) a true and correct copy of the Initial CCAA Order.

40. Having filed the above-referenced documents and because the Court is entitled to presume the authenticity of such documents filed in connection with chapter 15 petitions and the

15

Verified Petition under section 1516(b) of the Bankruptcy Code, the requirements of section 1515 of the Bankruptcy Code have been met.

## II. The Debtors Are Entitled to the Automatic Relief Under 11 U.S.C. § 1520

41. Section 1520(a) of the Bankruptcy Code sets forth a series of statutory protections that automatically result from the recognition of a foreign proceeding as a foreign main proceeding, see 11 U.S.C. § 1520(a), including the application of the protection afforded by the automatic stay under section 362(a) of the Bankruptcy Code to the debtor and to the debtor's property that is within the territorial jurisdiction of the United States. Given that the protections set forth in section 1520(a) flow automatically from the recognition of a foreign main proceeding under section 1517, the Foreign Representative respectfully submits that no further showing is required to the extent the Court recognizes the Canadian Proceeding as a foreign main proceeding.

42. Alternatively, to the extent Court determines to grant the Canadian Proceedings recognition (i) as foreign main proceedings with respect to the Canadian Debtors and (ii) as foreign nonmain proceedings with respect to the Non-Canadian Debtors, the Non-Canadian Debtors request that the protections afforded by the automatic stay under section 362(a) of the Bankruptcy Code be extended to the Non-Canadian Debtors and their property within the territorial jurisdiction of the United States pursuant to section 1521 of the Bankruptcy Code. Such relief is necessary and appropriate to protect the assets of the Non-Canadian Debtors, which is crucial to maintaining and maximizing the value of the Company as an enterprise for the benefit of all stakeholders. Furthermore, the Non-Canadian Debtors' creditors would be sufficiently protected because they can avail themselves of the Canadian Proceedings to assert any and all rights.

### III. The Discretionary Relief Requested Is Necessary and Appropriate to Effect the Restructuring and Should be Granted

43. Upon recognition of a foreign proceeding, section 1521(a) authorizes the Court to grant "any appropriate relief" at the request of the recognized foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a). Such relief may include, among other things, "granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)." 11 U.S.C. § 1521(a)(7). The Court may grant relief under section 1521(a) if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

44. To the extent not granted under section 1520 of the Bankruptcy Code, the Foreign Representative asks this Court to exercise its discretion under section 1521(a) to extend on a final basis the relief granted in the Provisional Relief Motion. The purpose of chapter 15 is carried out by granting recognition of and giving effect in full to the Initial CCAA Order as it will (a) maximize value of the Debtors' assets, (b) facilitate the fair and efficient cross-border restructuring; and (c) foster cooperation between courts in Canada and the United States.[4]

### IV. The Relief Requested Is Consistent with United States Public Policy and the Policy Behind the Bankruptcy Code

45. The purpose of chapter 15 is set forth in section 1501 and includes: (i) cooperation between courts of the United States and the courts and other competent authorities of foreign countries involved in cross-border insolvency cases; (ii) greater legal certainty for trade and investment; (iii) fair and efficient administration of cross-border insolvencies that protect the

---

[4] To the extent this Court believes section 1507 of the Bankruptcy Code is the appropriate section to grant any relief requested herein, the Foreign Representative requests such relief be granted thereunder.

17

interests of all creditors, and other interested entities, including the debtor; (iv) protection and maximization of the value of the debtor's assets; and (v) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment. See 11 U.S.C. § 1501. Recognition of the Canadian Proceedings as foreign main proceedings will support and facilitate the Debtors' effort to reorganize their business in connection with the Canadian Proceedings. Such orderly administration is demonstrably consistent with the public policy of the United States and the Bankruptcy Code.

46. Recognition of the Canadian Proceedings also would promote the fair and efficient administration of a cross-border insolvency proceeding that protects the interests of all creditors and interested parties. By recognizing the Canadian Proceedings and granting the relief requested, the process of resolving claims against the Debtors would be centralized in Canada. Claims would be treated in accordance with a court-approved distribution order that comports with Canadian law, and any disputes would be subject to the uniform jurisdiction of one tribunal, the Canadian Court.

[The remainder of this page is intentionally blank]

## CONCLUSION

WHEREFORE the Foreign Representative respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: June 7, 2025
New York, New York

                                                        Respectfully submitted,

                                                        **COLE SCHOTZ P.C.**

                                                        By: /s/ *Warren A. Usatine*
                                                        Warren A. Usatine
                                                        Mark Tsukerman
                                                        1325 Avenue of the Americas – 19th Floor
                                                        New York, NY 10019
                                                        Telephone: (212) 752-8000
                                                        Facsimile: (212) 752-8393

                                                        *Counsel for the Foreign Representative*

# VERIFICATION OF PETITION

I, NOAH GOLDSTEIN, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

I am a Managing Director of KSV Restructuring, Inc. ("KSV"), the authorized foreign representative (in such capacity, the "Foreign Representative") of the above-captioned Debtors. As such, I have full authority to verify the foregoing Verified Petition on behalf of the Foreign Representative.

I have read the foregoing Verified Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 7th day of June 2025
Toronto, Ontario
Canada

KSV Restructuring, Inc., solely in its capacity as
Foreign Representative and not in its individual
or corporate capacity

By: */s/   Noah Goldstein*
    Noah Goldstein, Managing Director